UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERTA SWENSEN, *et al.*,

Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER, *et al.*,

Defendants.

CASE NO. 2:24-cv-00553-GJL

ORDER ON DISCOVERY MOTIONS

This matter is before the Court on two Motions regarding discovery filed by Plaintiffs: (1) a Motion for Discovery Sanctions and Adverse Inference Instruction ("Motion for Discovery Sanctions") (Dkt. 20), and (2) an Emergency Motion to Compel Production of Documents ("Motion to Compel") (Dkt. 25).[1] Having reviewed the relevant record, and finding oral argument unnecessary, the Court **DENIES** the Motion for Discovery Sanctions. Dkt. 20. Further, the Court **DENIES without prejudice** the Motion to Compel. Dkt. 25. In connection with this

[1] In an initial response to the Emergency Motion, on April 22, 2025, the Court issued an Order directing that the discovery and dispositive motions deadlines be continued until further order of Court and establishing a briefing schedule for the Emergency Motion. Dkt. 26. In light of this Order, the Court herein shall refer to this Emergency Motion as simply a "Motion to Compel."

Order on these Motions, the Court will **ISSUE** an Amended Scheduling Order, to be filed concurrently with this Order.

## I. BACKGROUND

Plaintiffs Roberta Swensen and John McCarthy (collectively, "Plaintiffs") filed a Complaint on April 22, 2024,[2] alleging that Defendants Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar"), Veripro Solutions, Inc. ("Veripro"), and U.S. Bank, N.A., as trustee for Home Equity Mortgage Trust Series 2005-5 ("U.S. Bank"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*., and Washington's Consumer Protection Act ("WCPA"), RCW 19.86 *et seq*., when they attempted to collect on a second mortgage (the "Loan") that Plaintiffs believe was previously discharged in 2017. Dkt. 1-1.

During the period of discovery and without previously filing a motion to compel discovery,[3] on April 4, 2025, Plaintiffs filed the Motion for Discovery Sanctions, alleging a variety of misconduct, as set forth in detail below, related to Defendants' documents already produced. Dkt. 20. The Plaintiffs further request the Court compel production of certain documents and electronically stored information ("ESI") in a form that complies with Federal Rule of Civil Procedure 34(b)(2)(E). Dkt. 20. As relief, Plaintiffs seek sanctions relating to the spoliation and fabrication of evidence, as well as an Order compelling further production of documents. *See id*. at 2–3.

---

[2] The Complaint was originally filed in the Superior Court for Whatcom County, Washington on March 18, 2024, but was removed to this Court by Defendants on April 22, 2024. *See* Dkt. 1.

[3] Following the filing of a Joint Motion to Amend the Scheduling Order in this case, the Court entered an Order on February 18, 2025, amending case deadlines as set forth by the parties, including but not limited to, a new discovery deadline of April 28, 2025; a new dispositive motions deadline of April 28, 2025; and a new trial date of August 25, 2025. Dkts. 17, 18.

On April 22, 2025, Plaintiffs filed the Motion to Compel, seeking a Court Order compelling Defendant Nationstar to produce the documents requested in their Notice of Deposition of Frank Fernandez. Dkt. 25.

## II.     DISCUSSION

The Court strongly disfavors discovery motions and prefers that the parties resolve discovery issues on their own. However, if the parties are unable to resolve a discovery dispute, the requesting party may move for an order to compel. Fed. R. Civ. P. 37(a)(1). The party that resists discovery has the burden to show why the discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In evaluating a disputed discovery request, the Court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. However, Rule 26(b)(2)(C) provides that the Court must limit the frequency of discovery otherwise allowed by the federal civil rules or by local rule if the Court determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

Further, while a party may apply to the court for an order compelling discovery, Rule 37 requires the movant first to meet and confer with the party failing to make disclosure or discovery in an effort to resolve the dispute without court action. Fed. R. Civ. 37; *see also* Local Civil Rule ("LCR") 37.

**A.     Motion for Discovery Sanctions (Dkt. 20)**

Plaintiffs have filed this Motion for Discovery Sanctions in connection with Defendants' responses to Plaintiffs' Request for Production of Documents ("RFP"). *See* Dkt. 20. Specifically, Plaintiffs allege (1) Defendants' responses to Plaintiffs' requests violate Federal Rule of Procedure 34; (2) Defendants intentionally destroyed internal communications relevant to this litigation; (3) Defendant U.S. Bank is withholding documents; (4) Defendants fabricated evidence; and (5) Defendants Nationstar and Veripro are concealing the nature of their corporate relationship. *See id*. The Court will discuss these allegations in turn.

        1.     <u>Discovery Violations under Rule 34</u>

On September 3, 2024, Plaintiffs served RFPs on each Defendant. Dkt. 21 ¶ 7 (G. Vernon Decl.). Defendants Nationstar and Veripro assert they timely responded on October 3, 2024, producing the entirety of their files relating to Plaintiffs' Loan ("Loan File"), primarily in PDF format, with the exception of a limited number of Excel spreadsheets. Dkt. 21 ¶ 8; Dkt. 24 ¶¶ 6, 7, 19 (K. Geyer Decl.). Defendants further assert that, after a diligent search and reasonable inquiry, Defendant U.S. Bank concluded it had no documents responsive to Plaintiffs' RFPs but referred Plaintiffs to the respective Loan File produced by Defendants Nationstar and Veripro. Dkt. 24 ¶ 8.

In connection with the production of Plaintiffs' Loan File, Defendants have submitted the Declaration of Alan R. Blunt, an Assistant Vice President at Nationstar, to explain the nature of the business records for Plaintiffs' Loan.[4] Dkt. 23 (A. Blunt Decl.). Those details follow.

Initially, a loan file consists of documents Nationstar retains in the usual course of business such as loan applications, promissory notes, recorded land records, payment and communication histories, correspondence with the borrower, appraisal reports, and insurance and escrow documents. Dkt. 23 ¶ 6. Nationstar's system of record is the Communication History Profile ("CHP"). *Id.* ¶ 7; Dkt. 23-1, Ex. A. The CHP serves as a comprehensive and chronological record of all communications and key events that occur through the lifecycle of a loan. Dkt. 23 ¶ 7. The record includes, but is not limited to, borrower inquiries, loss mitigation activities, account transactions, and correspondence. *Id.* The entries within the CHP are made at or near the time that the documented event takes place to ensure the record is contemporaneous and accurate. *Id.*

A fundamental characteristic of the CHP is that, once these events or activities are recorded, they are immutable. *Id.* ¶ 8. This characteristic ensures the integrity and reliability of the system of record for loan servicing activities. *Id.* Nationstar has established routine business practices regarding its investigation and responses to borrower inquiries and other communications. *Id.* ¶ 9. One such practice is the generation and mailing of resolution letters in response to borrower inquiries following an investigation by a Nationstar customer relations specialist. *Id.* It is standard practice for a Nationstar employee who conducts the investigation,

[4] Mr. Blunt asserts that his Declaration is submitted on behalf of all Defendants, including Nationstar, Veripro, and U.S. Bank. Dkt. 23 ¶ 2.

prepares the response, and mails the response to create a corresponding entry in the CHP after completing each of these tasks. *Id*.

Because various Nationstar employees may work on a particular loan at different times, the business practice of documenting communications and actions within the CHP is critical to Nationstar's operation because it ensures any Nationstar employee who interacts with the borrower or their loan file has a complete and reliable history of prior communications and actions taken. *Id*. This approach is essential for maintaining accurate and accessible loan servicing information. *Id*.

Mr. Blunt further declares that, in the context of this case, Nationstar received two written inquiries from Plaintiffs' attorneys:

- On July 5, 2023, Nationstar received a letter from attorney Emily Rose Mowrey dated June 27, 2023, regarding Plaintiffs and the Loan. A Nationstar customer relations specialist, Frank Fernandez, investigated the matter, then compiled and mailed Nationstar's response to Ms. Mowrey on July 10, 2023. *Id*. ¶ 11(a).
- On September 11, 2023, Nationstar received a letter from attorney Steven Hathaway dated September 5, 2023, regarding Plaintiffs and the Loan. Mr. Fernandez also investigated this matter and mailed Nationstar's response to Mr. Hathaway on September 13, 2023. *Id*. ¶ 11(b).

Consistent with Nationstar's established record-keeping practices, Mr. Fernandez documented his activities in the CHP and saved images of each of the letters into Nationstar's file on the Loan. *Id*. ¶ 12.

According to Mr. Blunt, when outside counsel is retained to defend litigation an entire loan file is provided as it is kept in the usual course of business. *Id*. ¶ 13. No changes are made to

documents in the file, including no changes to metadata or other characteristics of the documents. *Id*. Further, the loan file, as it is kept in the usual course of business, may include more than one copy of a particular document. *Id*. ¶ 14. Such copies are not duplicates; rather, copies of documents are generated throughout the life of a loan for a variety of reasons. *Id*. For example, loan files often contain more than one copy of the promissory note or deed of trust for the loan because copies of those documents are made for a variety of reasons, such as when the promissory note and deed of trust are used as enclosures in correspondence. *Id*. Defendants assert that they do not remove such copies, if they are enclosures or otherwise, and all such copies of documents were produced in this case. *Id*. ¶ 15.

On February 12, 2025, Defendants Nationstar and Veripro each submitted supplemental production of documents, consisting of a copy of the recorded Deed of Reconveyance and a copy of Nationstar's transaction history profile. Dkt. 24 ¶¶ 9, 10.

On November 22, 2024, and April 2, 2025, the parties conducted two meet and confers regarding what Plaintiffs term as "evasive 'document production'" by Defendants. Dkt. 21 ¶ 15. At the November 22, 2024, meeting, Plaintiffs' counsel stated Nationstar's production did not comply with Federal Rule of Civil Procedure 34 because it consisted of a "'52-Card Pickup' style jumble of documents" consisting of a single 1,275-page PDF document that counsel found unlabeled, disorganized, and containing multiple duplicates. Dkt. 21 ¶¶ 9–13; Dkt. 24 ¶¶ 12–13. Plaintiffs' counsel requested the documents be produced as individual documents in their native formats. Dkt. 21 ¶ 12; Dkt. 24 ¶ 14. Defendants' counsel responded that, consistent with Rule 34, Defendants had produced documents as they are kept in the usual course of business, maintaining their original order and any metadata intact. Dkt. 24 ¶ 15. They added that they did not change the organization of the documents or delete copies because doing so "would

improperly infer that is how Defendants organize the documents in their usual course of business." *Id.* ¶ 16. Nevertheless, Plaintiffs' counsel again requested Defendants reproduce the documents individually and in their native formats, and Defendants subsequently responded with the reproduction on December 16, 2024. *Id.* ¶¶ 17, 18.

In the instant Motion, Plaintiffs claim that Defendants' actions with respect to this production of documents is violative of Rule 34. However, upon review, the Court finds the information provided by Defendants with respect to the submission of business records, including the Loan File, related to the Loan as they are kept in the usual course of business to be a sufficient response to Plaintiffs' Motion for Discovery Sanctions as well as compliant with Rule 34. Therefore, sanctions are not warranted and Plaintiffs' Motion (Dkt. 20) here is **DENIED**.

2. Destruction of Internal Communications

In their RFPs, Plaintiffs asked for all internal communications, including emails, relating to their Loan. Dkt. 24 ¶ 24. At both the November 22, 2024, and April 2, 2025, meetings, the parties addressed the absence of internal communications in Defendants' production. Dkt. 21 ¶ 18. Plaintiffs assert that at the November meeting opposing counsel stated, "email is the 'only' way Nationstar communicates internally, then added, 'I don't see many emails.'" *Id.* ¶ 19.

At the April 2, 2025, meeting, Defendants' counsel stated that Nationstar and Veripro do not consider internal communications to be business records and therefore do not keep them. *Id.* ¶ 20; *see also* Dkt. 24 ¶¶ 26 ("Defense counsel further explained Nationstar and Veripro do not retain internal communications or emails as business records."); 51 ("[D]efendants' policies are that emails are not business records."). According to Defendants, their counsel further explained that Nationstar and Veripro had already produced their respective and complete versions of the

Loan File. Dkt. 24 ¶ 25. They assert that during the April meeting they never stated Defendants destroyed any internal communications; rather, they explained the companies' one-year retention policy for emails. *Id.* ¶¶ 27, 48–49. That retention policy governing email and internal communications is as follows:

> Email is a communication tool and not a records management or filing system. Employees are not permitted to store any business records in email(s) . . . . Email is archived at 180 days and will be permanently deleted at 366 days . . . .

Dkt. 23 ¶ 16. Counsel further explained at the April meeting that "in the exceptional instance when an email is saved within a loan file, it is preserved indefinitely within the imaging system by virtue of the fact that it was saved outside of the email system." Dkt. 24 ¶ 50. Finally, defense counsel assert that Plaintiffs' current allegations of misconduct date back to at least 2017, so Defendants did not preserve any of the internal communications as they had no reason to anticipate litigation at that time. *Id.* ¶ 28.

Federal courts possess inherent powers to manage litigation. *Chambers v. Nasco*, 501 U.S. 32, 43 (1991). One such power is the discretion to levy sanctions for spoliation. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *see also* Fed. R. Civ. P. 37.

"Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (internal quotation and citation omitted). "To determine whether spoliation occurred, the majority of courts use some variation of a three-part test: '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or

defense.'" *Ghorbanian v. Guardian Life Ins. Co. of Am.*, No. C14-1396-RSM, 2017 WL 1543140, at *2 (W.D. Wash. Apr. 28, 2017) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) (citing cases)).

If spoliation is found, as stated above, courts have discretion to impose sanctions. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015). "[C]ourts generally consider three factors to determine whether and what type of sanctions to issue: '(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party.'" *Ghorbanian*, 2017 WL 1543140, at *2 (quoting *Apple Inc.*, 888 F. Supp. 2d at 992).

The imposition of an adverse inference as a sanction for spoliated evidence

> is based on two rationales, one evidentiary and one not. The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document . . . .
>
> The other rationale for the inference has to do with its prophylactic and punitive effects. Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial.

*Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (omission in original) (quoting *Nation-Wide Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 218 (1st Cir. 1982)). But "[b]ecause of [its] very potency, [the Court's] inherent power [to impose sanctions] must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

Here, Plaintiffs fail to establish that sanctions for spoliation of evidence are warranted. While Plaintiffs do establish that Defendants have not retained internal communications such as

email regarding their Loan (*see* Dkt. 21 ¶¶ 18–20; *see also* Dkt. 24 ¶¶ 26, 51), they have failed to make a showing of culpability on the part of Defendants. In particular, Defendants maintain that deletion of emails after one year is done so in accordance with their retention policy and in the normal course of their business.[5] *See* Dkt. 22 at 11–13. Plaintiffs offer no evidence beyond conclusory statements to rebut Defendants' explanation. *See* Dkt. 21 ¶ 22 ("The destruction of internal communications regarding a canceled loan inexplicably revived more than six years later, would seem to meet the definition of *spoliation*.") (emphasis in original).

As such, Plaintiffs have not provided a factual basis sufficient to rule that Defendants acted with intent to deprive Plaintiffs of the information's use in this litigation for two reasons: first, the record demonstrates only a failure to preserve, not an intent to deprive, and second, this failure to preserve occurred prior to the instant litigation. Here also, the Court must accept Defendants' position that "a routine document retention policy directly contradicts an inference of a culpable state of mind." Dkt. 22 at 13 (citing *United States v. $40,955.00*, 554 F.3d 752, 758 (9th Cir. 2009) ("A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business.")).

In sum, Plaintiffs have failed to establish spoliation, without which, the Plaintiffs are not entitled to either an adverse inference or sanctions. *See Akiona*, 938 F.2d at 161 (finding the district court erred in sanctioning a party for spoliation because there was no evidence that the

[5] In their Reply, Plaintiffs further argue that Defendants have misrepresented their email retention policy. Dkt. 27 at 3–4. Specifically, on April 17, 2025, Plaintiffs deposed Mr. Blunt, who initially stated that Nationstar maintains a two-year retention policy rather than a one-year policy, but later corrected himself to confirm the one-year retention policy. *Id*. at 4. Plaintiffs contend Mr. Blunt's correction raises concerns about the credibility of Defendants' representations regarding the company's email retention practices. *Id*. The Court disagrees. Rather, the Court concludes that Mr. Blunt's corrected testimony, absent additional evidence from Plaintiffs, is what it appears to be – a correction. Thus, the testimony does not support a finding of spoliation here.

party destroyed the evidence "with the intent of covering up information"); *Traverse Therapy Services, PLLC v. Sadler-Bridges Wellness Group, PLLC*, No. 2:23-cv-1239-MJP, 2024 WL 896168 (W.D. Wash. Mar. 1, 2024) (request for sanctions denied where Plaintiffs fail to provide clear evidence of spoliation). Plaintiffs' Motion (Dkt. 20) on this basis is **DENIED**.

3. Defendant U.S. Bank's Failure to Produce Documents

As set forth above, Defendant U.S. Bank did not produce documents responsive to Plaintiffs' RFPs, but instead referred Plaintiffs to the respective Loan File produced by Nationstar and Veripro. Dkt. 24 ¶ 8. Plaintiffs now ask the Court to compel U.S. Bank to produce responsive documents. Dkt. 20 at 2.

In response to the instant Motion, Defendants provide the following background with respect to U.S. Bank's role in this case. U.S. Bank, as trustee for Home Equity Mortgage Trust Series 2005-5 ("Trust Series 2005-5"), is the owner of Plaintiffs' Loan. Dkt. 23 ¶ 19. The Loan was sold into the Trust Series 2005-5 as of December 1, 2005, pursuant to a Pooling and Servicing Agreement of the same date. *Id*. That Agreement is a document of public record. *Id*. In his Declaration submitted in support of Defendants' response to the instant Motion, Mr. Blunt asserts that, in its role as trustee for Trust Series 2005-5, U.S. Bank has no knowledge of the servicing of the Loan such as payment history, validation of debt, loss mitigation, foreclosure proceedings. or payment adjustments. *Id*. He adds that U.S. Bank has no loan level documents relating to the Loan; rather, as the loan servicer, Nationstar maintains possession of the Note. *Id*.

The parties addressed Defendant U.S. Bank's failure to produce responsive documents at both the November 22, 2024, and April 5, 2025, meetings. Dkt. 21 ¶ 22. From the parties' briefing on the instant Motion, it appears there was some confusion regarding the phrasing of the

RFPs on the part of U.S. Bank, specifically as to the requests' relevance and proportionality. *See* Dkt. 21 ¶¶ 25–30; Dkt. 24 ¶¶ 29–39.

Clearly that confusion was not resolved at either meet and confer between the parties, and thus Plaintiffs now seek to compel production of documents from U.S. Bank. Dkt. 20. In particular, Plaintiffs request the Court compel Defendant U.S. Bank to produce documentation relating to:

- U.S. Bank's ownership/holding of Plaintiffs' Note;
- The securitization of Plaintiffs' Loan into Home Equity Mortgage Trust Series 2005-5;
- The cancellation of Plaintiffs' debt in 2017;
- The subsequent revival collection efforts by Veripro; and
- All communications between U.S. Bank, Nationstar, and Veripro regarding Plaintiffs' Loan.

Dkt. 20 at 2. These requests from Plaintiffs, however, do not reference any of the previously submitted RFPs served on Defendant U.S. Bank. *See* Dkts. 20, 21, 27. Without such reference, the Court will not compel further responses to unidentified RFPs. Thus, Plaintiffs' Motion (Dkt. 20) on this basis is **DENIED without prejudice**.

4. Fabricated Evidence

On September 5, 2023, Plaintiffs' attorney Steven Hathaway mailed Defendant Nationstar a Qualified Written Request ("QWR") disputing the validity of Plaintiffs' Loan and requesting information and documentation regarding that Loan. *See* Dkt. 1-3 ¶ 81. On September 13, 2023, Nationstar responded with a letter stating it had received the QWR and would respond

no later than September 29, 2023. *See* Dkt. 21 ¶ 45; Dkt. 21-2, Ex. B. Plaintiffs claim Nationstar never sent that response to the QWR. Dkt. 1-3 ¶ 86.

In the instant Motion, Plaintiffs now attach a letter from Nationstar dated September 13, 2023, that contains a substantive response to the QWR and was produced in response to the first discovery requests. Dkt. 21 ¶ 48; Dkt. 21-3, Ex. C. Plaintiffs claim this September 13, 2023, response letter was fabricated. Dkt. 21 ¶ 48. In support of this incendiary accusation, Plaintiffs assert (1) the letter is addressed to "Stephen C. Hathaway," a misspelling of Mr. Hathaway's given name, (2) is dated September 13, 2023—the same date of Nationstar's initial letter indicating it would respond to the QWR no later than September 29, 2023, and (3) Plaintiffs claim they never received the responsive September 13, 2023, letter, and that staff at Plaintiffs' law firm "are prepared to testify to same." *Id.* ¶ 49–50.

In response to the Motion, Defendants provide the Loan File's CHP that contains several entries dated September 13, 2023, including those for acknowledgement letters sent to Plaintiffs and to Attorney Hathaway. Dkt. 23-1 at 68; Dkt. 23-8, Ex. H; Dkt. 23-9, Ex. I. The other entry on September 13, 2023, indicates an account review and "Resolution Letter sent." Dkt. 23-1 at 68. Defendants assert here that this last September 13, 2023, entry demonstrates the mailing of Nationstar's substantive response letter. Dkt. 22 at 15.

Plaintiffs have not replied to Defendants' response in their Reply to the instant Motion. *See* Dkt. 27. Thus, upon review, the Court finds Defendants' response to Plaintiffs' accusation of fabrication of evidence to be sufficient particularly given the number of records and activities contemporaneous recorded that appear to corroborate Defendants' position.

Accordingly, Plaintiffs have failed to establish that Defendants fabricated evidence and, therefore, sanctions are not warranted. Plaintiffs' Motion (Dkt. 20) on this basis is **DENIED**.

5. Defendants' Nationstar and Veripro's "Corporate Gamesmanship"

In their final issue raised in this Motion, Plaintiffs claim Defendants Nationstar and Veripro have engaged in "corporate gamesmanship" in order to avoid their discovery obligations. Dkt. 20 at 10. While somewhat unclear, Plaintiffs appear to take exception to Nationstar's response to RFP 22 and Veripro's responses to RFPs 11 and 12, as they relate to the corporate relationship between these two companies. *Id.*; Dkt. 21 ¶¶ 33–40.[6]

In response, Defendants again assert they have provided Plaintiffs with respective versions of the comprehensive Loan File and that they are not withholding any of their records. Dkt. 22 at 15; Dkt. 24 ¶ 44. In addition, although the parties appear to jointly recognize the Defendants related but independent roles to the Loan and its servicing, Defendants suggest Plaintiffs exaggerate these business relationships with their "misguided belief that Nationstar and Veripro enjoy unfettered access to each other's business records." Dkt. 22 at 15. According to Defendants, Nationstar and Veripro do not share record-keeping systems or business records. Dkt. 23 ¶ 18. When Nationstar ordinarily refers an account to Veripro for collection, Nationstar provides documentation sufficient only for that purpose. *Id.*

[6] Seemingly included in Plaintiffs' discussion of "examples" of this "corporate gamesmanship" between Nationstar and Veripro is their objection to Nationstar's responses to RFPs 10 and 11. Dkt. 21 ¶ 43.

In RFP 10, Plaintiffs requested a copy of "all servicing transfers from Loan Number 0617728654 from February 1, 2022, to the date of your response to this request." Dkt. 21-4 ¶ 10, Ex. D (Nationstar's Responses to Plaintiffs' RFP). Initially noting the vague and ambiguous nature of the request, Nationstar further responded that it "will comply with this request by producing true and correct copies of any servicing transfer notices for loan number 0617728654." *Id.*

In RFP 11, Plaintiffs requested "Proof of the true sale of the promissory note for Loan Number 0617728654 to the trust where Loan Number 0617728654 is trading or has traded." *Id.* ¶ 11. Again noting the vague and ambiguous nature of the request as well as its relevancy, Nationstar further responded that it "is unable to comply with this request because it cannot ascertain what is meant by the phrase 'true sale of the promissory note.'" *Id.*

From a review of Nationstar's responses to these RFPs, the Court fails to understand their relevancy to this particular issue and, thus, will not direct further response from Defendants on these RFPs at this time.

To resolve this dispute over whether Defendants are engaging in "corporate gamesmanship," the Court will address only the RFPs at issue.

In RFP 22 to Nationstar, Plaintiffs requested "All documents and records comprising a complete and detailed explanation of why Veripro Solutions, Inc. sent a letter dated March 15, 2023, addressed to Roberta Swensen which identifies debt owing under Loan Number 0617728654 as $41,848.25 under Veripro Account Number 501043." Dkt. 21-4 ¶ 22, Ex. D (Nationstar's Responses to Plaintiffs' RFPs). Noting the vague and ambiguous nature of the request, and interpreting it as a request to seek "any documents that contribute to an understanding of the basis for Veripro's involvement with loan number 0617728654," Nationstar responded that it "does not have access or control over Veripro's records or systems, and therefore, cannot comply with this request." *Id*.

In RFP 11 to Veripro, Plaintiffs requested "All documents related to the Mr. Cooper letter dated January 31, 2019, addressed to Roberta Swensen containing a 2018 Form 1099-C dated March 29, 2018, which identifies the discharge, and cancellation of the debt associated with Veripro Account Number 501043 in the amount of $36,181.89." Dkt. 21-5 ¶ 11, Ex. E (Veripro's Responses to Plaintiffs' RFPs). In RFP 12 to Veripro, Plaintiffs requested "All documents related to the Mr. Cooper letter dated January 31, 2019, addressed to John McCarthy containing the Form 1099-C dated March 29, 2018, which identifies the discharge, and cancellation of the debt associated with Veripro Account Number 501043 in the amount of $36,181.89. *Id*. ¶ 12, Ex. E. In response to both RFPs, Veripro stated, "it does not have access or control over Nationstar's records or systems, and therefore, cannot comply with this request." *Id*. ¶¶ 11, 12, Ex. E.

As it pertains to all three RFPs, in the Declaration accompanying this Motion, Plaintiffs assert they "have reason to believe there is documentation explaining [the decision to resuscitate

canceled debt after the statute of limitations had run], especially where Veripro communicated to Plaintiffs that their account had undergone an 'internal review.' Neither Veripro nor Nationstar/Cooper have asserted privilege over those records." Dkt. 21 ¶ 39.

In light of Defendants' assertion that they have produced their entire files relating to the Loan, but to the extent that Plaintiffs seem to request the Court compel Defendants Nationstar and Veripro to *supplement* their production with "any documentation arising from the re-activation of the debt or internal review," (Dkt. 21 ¶ 40), at this time Plaintiffs' Motion (Dkt. 20) on this basis is **DENIED without prejudice**.

**B.     Motion to Compel (Dkt. 25)**

Plaintiffs have also filed a Motion to Compel requesting the Court order Defendant Nationstar to produce documents requested in connection with a Notice of Deposition to Nationstar employee Frank Fernandez. Dkt. 25. In response, Defendants object on several grounds, but notably contend the document categories sought in the Notice of Deposition (Dkt. 25-1) are subsumed by the categories in the RFPs to which Nationstar has already responded. *See* Dkt. 28 at 2.

Upon review, the Court agrees with Defendants that Plaintiffs' document requests set forth in the Notice of Deposition are fully encompassed in the RFPs served on Nationstar. *Compare* Dkt. 25-1 at 4–5 *with* Dkt. 21-4 at 3–24. Further, because the Court is permitting Plaintiffs to provide Defendants with clarification as to several RFPs directed at both Nationstar and Veripro, as set forth above, and shall issue an Amended Scheduling Order, this Motion to Compel (Dkt. 25) is **DENIED without prejudice**.

//

//

## III. CONCLUSION

Plaintiff's Motion for Discovery Sanctions (Dkt. 20) is **DENIED** as follows:

(1) Plaintiffs' request for sanctions based on their allegation that Defendants have violated their obligations under Federal Rule of Civil Procedure 34 is **DENIED**;

(2) Plaintiffs' request for an adverse inference instruction based on their allegation that Defendants have engaged in spoliation is **DENIED**;

(3) Plaintiffs' request for the Court to compel production of documents from U.S. Bank is **DENIED without prejudice**;

(4) Plaintiffs' request for sanctions based on their allegation that Defendants have fabricated evidence is **DENIED**; and

(5) Plaintiffs' request for sanctions relating to the "corporate gamesmanship" between Defendants Nationstar and Veripro is **DENIED without prejudice**.

Plaintiff's Motion to Compel (Dkt. 25) is **DENIED without prejudice**. Finally, the parties shall **COMPLY** with the deadlines set forth in the Amended Scheduling Order, **to be filed concurrently with this Order**.

Dated this 9th day of June, 2025.

Grady J. Leupold
United States Magistrate Judge